UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY C. MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>REDDEN, et al.,<br><br>Defendants. | CAUSE NO. 3:18-CV-595-JD-MGG |

<u>OPINION AND ORDER</u>

The defendants allege that Anthony C. Martin, a prisoner without a lawyer, submitted a false affidavit and false documents in support of his response to a summary judgment motion asserting that Martin failed to exhaust his administrative remedies as to all but one claim. ECF 252; ECF 253; 261; ECF 262; ECF 267. State Defendants Rhonda Brennan, Howard Morton, Carl Tibbles, Kenneth Gann, Robert Shriner, Lt. Timothy Redden, Officer Terry Redden, Christopher Tatum, Kirk Zimmerman, Torrie Dillon, Pamela Bane, Jillian Thomas, Ryan Statham, Dylan Cabanaw, Steve McCann, Nathan Seles, Joshua Ellis, Seth Crawford, Jeff Lecouris, Vernon Tiedeman, Anthony Watson, and Aaron Jonas,[1] moved for sanctions. ECF 267. Medical Defendants, Frieda Ann Luther, Dr. Matias, Dawn Nelson, Jennifer Chapman, Andy Manning, Morgeanne Bush, Monica Wala, Nurse Sandra Redden, Carmen Rojas, Debra Rose, and the Estate of Dr.

---

[1] The above State Defendants are listed on the docket as follows: Rhonda Brena PREA Manager, Mr. Morton Grievance Specialist, Major Tibbles, Assistant Warden Gann, Captain Shriner, Lt. Redden, Officer Redden, Lt. Tatum, Lt. Zimmerman, Internal Affairs Officer Dillon, Unit Manager Pane Bane, O.I.C. (Female) Thomas, Officer Statham, Lt. Cavanar, Captain McCann, Officer Selas, Officer Ellis, Officer Crawford, Officer Lacorise, Officer Tiderman, Lt. Watson, and Sgt. Jonnas.

Joseph Thompson joined the motion. ECF 273. Martin responded by filing a variety of motions, including a motion for a hearing on the issue of sanctions. ECF 290. On January 12, 2021, after reviewing the record, the court concluded that the documents appeared fraudulent. ECF 291 at 7. The court took Martin's request for a hearing under advisement. ECF 290; ECF 291. Martin was instructed to explain what evidence he would present at a hearing if one were granted. ECF 291. Martin was also ordered to show cause why, given the seriousness of the offense and the history of previous sanctions against him, he should not be sanctioned with dismissal of this case, monetary sanctions, and a filing ban.[2]

The court's order warned Martin that his apparent conduct in this matter exposes him to potential criminal prosecution and advised him that he has a right against self-incrimination guaranteed by the Fifth Amendment. He was advised that he is not required to make any statement. He was advised that, even if he already made a statement, he is not required to make additional statements. And, he was advised that any statement he makes can be used against him in a criminal prosecution. ECF 291.

Following this order, Martin filed a response, titled as a motion to show cause and in opposition of sanctions. ECF 296. He also filed two separate designations of evidence in support of his response, one of which includes a second copy of his response. ECF 292; ECF 293. The defendants then notified the court that it appeared that

---

[2] The court noted that *Martin v. Wentz*, 1:13-CV-244-SLC would be excluded from the filing ban because that case was assigned to another judge and it is for that judge to decide what sanctions are warranted in that case. ECF 291. However, *Martin v. Wentz*, 1:13-CV-244-SLC has been dismissed.

Martin's designation of evidence contained further false documents. ECF 295. This prompted a flurry of other motions by Martin. ECF 297; ECF 299; ECF 300; ECF 301; ECF 303. The defendants were granted additional time to respond, and they filed a joint response on March 9, 2021. ECF 298; ECF 302; ECF 305. Martin has now filed a reply (ECF 309), and each of the pending motions is now ripe for adjudication.

Defendants' Motion for Sanctions

The defendants seek sanctions pursuant to Rule 56(h) and the court's inherent authority. ECF 271. Federal Rule of Civil Procedure 56(h) provides that:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subject to other appropriate sanctions.

Fed. R. Civ. P. 56(h). *See also James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020). In addition, courts have the inherent authority to fashion appropriate sanctions for abuses of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Secrease v. W & S Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015).

The defendants allege that the following material is fraudulent: paragraphs four and eight of Martin's affidavit (ECF 262-1 at 2-4), and various grievance documents (ECF 262-1 at 8, 9, 25, 35, 44). Martin's affidavit states that "he filed several grievances such as informal grievances, formal grievances, as well as grievance appeals as to the claims he alleg[es] in his Complaint as to the defendants." ECF 262-1 at 3. The affidavit further provides that "the defendants' [sic] have provided the Court with an incomplete

grievance records [sic] of plaintiff's filing, and is infact [sic] missing critical grievances, its responses from staff, and information to support its exhaustion of administrative remedies." ECF 262-1 at 4.

One of the challenged documents is an Offender Grievance Response Report that contains Martin's signature indicating that he disagreed with the grievance specialists' response, with a date of November 18, 2015, next to Martin's signature. It includes a bates stamp of GRIEVANCE000655 on the bottom right corner. ECF 262-1 at 8. The defendants assert that this same document was bates stamped and produced during discovery in *Martin v. Zimmerman*, No. 3:18-CV-593-JD-MGG, but the version produced during discovery did not include Martin's signature, the indication that he disagreed with the grievance specialists' response, or the date of November 18, 2015. They have produced a version of this document that does not contain Martin's signature, a date next to where his signature is on the document he produced, or a check mark indicating that he disagreed with the grievance specialists' response. ECF 267-6 at 262. The paralegal responsible for mailing the discovery in October 2018 has provided a declaration indicating that, when the discovery was mailed, it contained the bates stamp but did not contain Martin's signature, the date next to his signature, or the check mark indicating that he disagreed with the determination. ECF 267-4; ECF 267-6 at 262. In short, the defendants assert that he added this information to make it look like he appealed the determination.

Martin also tendered several grievance appeal forms that are allegedly fraudulent. The documents are dated November 18, 2015, January 26, 2016, November

4

25, 2016, and January 4, 2017. ECF 262-1 at 9, 25, 35, 44. But, the documents are each on "State Form 45473 (R3/4-17)." According to Andy Dunigan, a policy manager at the IDOC's central office who designs and approves the forms used in the offender grievance process, this is the third revision of State Form 45473, and the department did not begin using the form until April of 2017 – more than a year after Martin purports to have signed these forms. ECF 267-3. Grievance Specialist Joshua Wallen and Pamela James (a litigation liaison) have also stated that the form was not in use until April of 2017. ECF 267-1; ECF 267-2. Andy Dunigan's affidavit indicated that the "R3/4-17" version of the form was still in use by the IDOC at the time he submitted his affidavit, and that it was available to all offenders. ECF 267-3. The defendants assert that these documents are fraudulent because the form was not in use when these appeals were allegedly signed.

In response to these allegations, Martin indicates that he did not alter any of these documents. ECF 296 at 3. He claims that his documents were confiscated by custody staff, but his mother had copies and he obtained the documents from her. *See* ECF 296 at 5; ECF 296-1 at 2.

Martin notes that he has been in a special housing unit for the last two and a half years and lacks access to a computer. The defendants, however, have access to the necessary software to alter documents. ECF 296 at 5-6. Martin has provided copies of two other versions of the Offender Grievance Response Report. ECF 262-1 at 8; ECF 293 at 3-4. He refers to one version as the original – it is identical to the one tendered in response to the summary judgment motion (ECF 262-1 at 8) but lacks the bates stamp.

5

ECF 293 at 3. The defendants allege that this document is altered. ECF 305 at 4-5. The other one matches what the defendants submitted in response to a discovery request with two differences: it is stamped as "Scanned Classification" and "Confidential." ECF 293 at 4.

Bates stamps are commonly used in litigation to add identifying numbers to a collection of documents. https://www.lexisnexis.com/Casemapsuitesupport/cm/cm10/cm_bates_stamp_about.htm (last visited April 13, 2021). The addition of a bates stamp to documents provided during discovery is not inappropriate in any way. As defendants note, however, the presence of a bates stamp allows the document to be compared to that which was produced during discovery, and the version produced during discovery does not match the version that Martin produced here.

According to Joshua Wallen, the "Scanned Classification" stamp is used to show that a document has been scanned into the IDOC's system for preservation, and the "Confidential" stamp is used to indicate that the document contains confidential material and should be stored in the confidential portion of an offender's packet. ECF 305-1. They are purely administrative tools and are not applied until a document has been finalized. *Id.* They have nothing to do with the substance of the document. *Id.*

Regarding the allegedly fraudulent grievances, Martin continues to assert that he submitted these grievances to Vicky Long and Howard Morton at the Indiana State Prison. ECF 296 at 7. He further claims that version "R3/4-17" of the grievance appeal form was being used by the grievance department at Indiana State Prison in 2015 and

2016. *Id.* He takes issue with the affidavits of Joshua Wallen, Pamela James, and Andy Dunigan, claiming that they are only speculating regarding what documents Vicky Long, Howard Morton, and Dawn Buss received or did not receive in 2015 and 2016. *Id.* at 3-4. While Joshua Wallen and Pamela James may not have personal knowledge of what documents were received by other staff members, Andy Dunigan was responsible for designing and approving the form; he had personal knowledge of when the form was implemented. ECF 267-3.

Martin supports his assertion that the form was in use during the time he submitted the grievances by producing more grievances dated August 30, 2016, and October 27, 2016 that are also on the "R3/4-17" form, and are stamped as "received" and allegedly signed by Vicky Long and Howard Morton, respectively. ECF 296 at 7; ECF 293 at 6, 10. Martin explains that they do not have a grievance number on them because they were rejected. *Id.* at 4. Martin argues that Vicky Long and Howard Morton did not respond to his grievance by indicating that the form was not in use – rather, they signed the forms as received. ECF 296 at 8.

Regarding the allegedly fraudulent grievance appeal documents, Martin claims that version "R3/4-17" was in use during 2015 and 2016 at the facility where he was housed, even if it was not in use elsewhere. Martin argues, based on a response to a request for interview form signed by Tawni Templeton, that rejected grievances are not assigned grievance numbers, that each facility has its own hard drive where grievance appeal documents are stored, and that grievance appeal forms are only provided by the

7

grievance specialist – they are not readily available to all offenders, as defendants suggest. ECF 296 at 4; ECF 293 at 42.

As for the allegedly fraudulent statement in the affidavit, Martin claims that the assertions in it were made to the best of his knowledge and that he did not have an intention to mislead the court. ECF 296 at 3.

When Martin originally sought a hearing on the issue of sanctions, he did not explain why a hearing was necessary. ECF 290. As already noted, this court granted Martin an opportunity to explain what evidence he would present at a hearing if one were granted. ECF 291. The court explained that a hearing would be granted only if Martin could demonstrate that he has evidence to present that is relevant to determining whether the statements in his affidavit or the documents are false. *Id.*

In response, Martin filed another motion for a show cause hearing. ECF 303. He notes that he submitted additional documents and an affidavit from his mother[3] in response to the show cause order. *Id.* at 1-2. He feels that live testimony is needed, but he does not explain further. *Id.* at 4. He notes that all of his legal documents were recently seized, and he feels that custody staff is doing this to place him at a disadvantage in this matter, but the actions of custody staff now have little to do with whether the documents and affidavit he submitted to this court were fraudulent. *Id.* Martin has filed proposed subpoenas for ten different individuals (ECF 308), and he indicates that he also wants to provide live testimony (ECF 303 at 4). But, he has not

---

[3] The affidavit of Martin's mother, Denice Martin, dated January 9, 2021, states that she recently sent him copies of his legal cases. ECF 296-1 at 2.

indicated what testimony he would provide, why he wants the other individuals to testify, or what their testimony would add to the record before the court.[4]

In response to the show cause order, Martin has denied that he altered the bates stamped Offender Grievance Response Report and fabricated the four grievance appeal documents. But he has not pointed to any evidence that disputes the sworn statement of the paralegal indicating that the version of the Offender Grievance Response Report sent to Martin in October 2018 contained a bates stamp of GRIEVANCE000655, but did not contain Martin's signature, a date next to where his signature is on the document that Martin produced, or a check mark indicating that Martin disagreed with the grievance specialists' response. And, he has not offered any viable explanation for submitting a bates stamped document that differs from what was provided to him during the discovery process. There is only one plausible conclusion to be drawn from this: Martin knowingly submitted a document that was altered after he received a copy of it and before he submitted it to the court. It makes no difference whether Martin or

---

[4] In his response to the show cause order, Martin also renews his earlier request (ECF 278; ECF 282) for a court appointed forensic analyst. ECF 296 at 13. His earlier request was denied because Martin was requesting an expert so he could develop evidence – not to help the court in understanding the evidence. Furthermore, because evidence before the court is not complicated, no expert assistance was required. The court characterized Martin's efforts as a fishing expedition. Now, Martin points to a copy of the document marked as "Confidential" and "Scanned Classification" and to certain emails as proof that other documents exist that may be relevant, and that hiring a forensic analyst therefore would not be a mere fishing expedition. *Id.* The documents that Martin has submitted do not alter this court's assessment of the need for expert assistance. The presence of a second copy of the Offender Grievance Response Report without Martin's signature but with the addition of stamps labeling it as "Confidential" and "Scanned Classification" does not show, as Martin suggests, a nefarious plot to hide evidence. The defendants have offered a reasonable explanation for the copy with the stamps, and it would remain a mere fishing expedition to have an expert attempt to unearth additional relevant evidence that has not been disclosed. This is especially so given the narrow scope of the inquiry on which this court's decision rests; whether a bates stamped document purportedly signed and dated by Martin but that does not match the document produced during discovery with the same bates stamp is fraudulent. Furthermore, the evidence still is not complicated. Therefore, the court stands by its earlier ruling denying a court appointed forensic analyst.

someone acting on his behalf made the alterations; the nature of the alterations renders any claim that he acted unknowingly implausible. Thus, as to this document, there are no relevant disputes to be resolved, and no hearing is necessary to conclude that this document is fraudulent. Even if Martin could prove that the Offender Grievance Response Report signed by him and submitted in response to the court's show cause order – the one without the bates stamp - was not fraudulent, that would not alter the conclusion that the bates stamped Offender Grievance Response Report signed by Martin and submitted to the court was fraudulent. The presence of an authentic Offender Grievance Response Report signed by Martin is relevant to whether he exhausted his administrative remedies, an issue this court is not deciding today. It is not relevant to whether the bates stamped version of the Offender Grievance Response Report signed and submitted by Martin was fraudulent.

However, in response to the order to show cause, Martin offered evidence that, if authentic, suggests that version "R3-4/17" of the grievance appeal was in use in 2015 and 2016. The defendants contend that the evidence consists of additional fraudulent documents. ECF 305 at 2-3. Because there is a disputed issue of fact regarding the authenticity of the documents Martin has submitted, this issue cannot be resolved without a hearing. But, a hearing is not necessary here because the submission of the fraudulent Offender Grievance Response Report, when considered in light of Martin's history of sanctionable behavior, is enough to warrant sanctions. Martin's fraud has already consumed considerable judicial resources, and the use of additional resources to sort out whether there are instances of fraud over and above the submission of the

fraudulent bates stamped Offender Grievance Response Report is not warranted, as it would not impact the manner in which Martin is sanctioned. In other words, a hearing would not assist the court in resolving the question of sanctions. *See Peacher v. Talbot*, 840 Fed. Appx. 37 (7th Cir. Mar. 19, 2021) (noting that a hearing is needed only where it would be of assistance to the court in reaching a decision).

Martin was sanctioned twice in 2009 in the Northern District of Indiana. ECF 108-2; ECF 108-3. In *Martin v. Ft. Wayne Police Dept.*, 1:09-CV-154 (June 17, 2009), the late Judge Rudy Lozano found that Martin made a false statement in an *in forma pauperis* petition and dismissed the case with prejudice as a sanction. In *Martin v. York*, 1:09-CV-332 (Dec. 21, 2009), Judge James T. Moody found that Martin had filed a second motion to proceed *in formal pauperis* containing misrepresentations in an attempt to deceive the court. Martin's case was dismissed as a sanction and he was restricted from filing any new case without prepaying the filing fee for two years. One of Martin's cases filed in the Southern District of Indiana was dismissed upon screening as factually frivolous due to a finding that it contained false statements. *See Martin v. Zantecky*, Case No. 1:18-CV-2443-JRS-MPB (S.D. Ind. Oct. 9, 2018). More recently, Martin was sanctioned in the Southern District of Indiana for making a false statement in a request to recruit counsel and sanctioned with dismissal and a filing bar; a sanction that the Seventh Circuit upheld on appeal. ECF 108-1; *Martin v. Fowler*, 804 Fed. Appx. 414 (7th Cir. 2020). The conduct at issue here - falsifying a document to make it appear as if he filed a grievance appeal and exhausted his administrative remedies when he did not – is even more

11

egregious than the previously sanctioned conduct. Given the egregious nature of the conduct and Martin's history of false statements, a severe sanction is warranted.

Accordingly, Anthony C. Martin will be sanctioned consistent with the Court of Appeals for the Seventh Circuit's guidance in *Support Sys. Int'l v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995). This case will be dismissed with prejudice. Additionally, a filing ban will be imposed preventing Martin from filing any document in any civil case in this court until he pays all fines and filing fees due in any federal court. This filing ban does not prevent Martin from litigating appeals or habeas cases. Given his status as an inmate with limited resources, further monetary sanctions would not serve to deter future fraudulent activity, and therefore will not be assessed. If Martin has not paid all filing fees in two years, he may then file a motion asking the court to modify or rescind the filing ban.

Martin's Motions for Sanctions and Judicial Notice

Martin previously moved for sanctions against the defendants, and his motion was denied because he had not identified any sanctionable action on the part of the defendants. ECF 282; ECF 291. In his response to the court's show cause order, Martin seeks to renew his request for sanctions, arguing that his newly received evidence shows that defendants are the ones trying to deceive the court. ECF 296 at 12. He also seeks sanctions against the defendants in his Motion to

Inform the Court and Take Judicial Notice (ECF 297; ECF 301)[5] and Renewal for Motion for Sanctions Pursuant to FRCP 11 (ECF 299). But he has not demonstrated that the defendants or their counsel engaged in any conduct warranting sanctions.

Federal Rule of Civil Procedure 11(b) requires that parties certify "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that their filings have an adequate foundation in fact and law and are not being presented for any "improper purpose." FED. R. CIV. P. 11(b). "The rule is principally designed to prevent baseless filings." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (citation and internal quotation marks omitted). In deciding whether to impose Rule 11 sanctions, the court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). The court has "considerable discretion in deciding whether to issue Rule 11 sanctions." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020). Nevertheless, "such sanctions are to be imposed sparingly, as they can have significant impact beyond the merits of the individual case." *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (citation and internal quotation marks omitted).

The evidence that Martin submitted in response to the court's show cause order does not suggest that defendants or their counsel should be sanctioned.

---

[5] Martin filed two copies of the same motion with the court.

Martin's submission of a version of the Offender Grievance Response Report with his signature but without a bates stamp (ECF 293-3) does not demonstrate bad faith on the part of the defendants, because it does not demonstrate that the document Martin submitted to the court is not fraudulent. At best, it is some evidence that Martin took this step in exhausting his administrative remedies. At worst, it demonstrates that Martin submitted another fraudulent document.

The version of the Offender Grievance Response Report without Martin's signature or a bates stamp but with stamps of "Confidential" and "Scanned Classification" (ECF 293 at 4) also does not suggest that the defendants or their counsel should be sanctioned. The defendants have offered an explanation for the use of the stamps and the existence of this document that makes sense, and the substance of the document is otherwise identical to that produced during discovery.

The additional grievances (ECF 293 at 6, 10) that Martin has produced in response to the show cause order - grievances that also are on "State Form 45473 (R3/4-17)" even though they are dated prior to when the defendants assert the form becoming available – also do not demonstrate that defendants or their counsel should be sanctioned. Assuming for the moment that these documents are not falsified by Martin, their existence shows only that the forms were in use prior to 2017 and that the statements of Andy Dunigan and two others to the contrary are inaccurate. But inaccuracies do not warrant sanctions. Martin has not provided any information that suggests that the parties or their counsel should have known the statement was groundless.

In his Motion to Inform the Court and Take Judicial Notice (ECF 297; ECF 301) and Renewal for Motion for Sanctions Pursuant to FRCP 11 (ECF 299), Martin suggests that the defendants' deceit is demonstrated by his proof that old forms are used even after newer versions becomes available. Martin asserts that Wabash Valley Correctional Facility was using an outdated version of a different form than the allegedly fraudulent forms at issue here - "State form 45471 R4/4-17," - while Pendleton Correctional Facility was using "State form 45471 R5/3-20." According to Martin, each facility operates separately and does what they want, resulting in different forms being used at different times. Martin suggests that this makes his claim that version "R3/4-17" of the grievance appeal form was in use in 2015 and 2016 plausible. But Martin is missing the point. It is plausible that an old form could still be in use despite the availability of a new form. It is not plausible that a form that was not yet in use was already being used. That one facility continued to use the old version of the form while another facility was using the new form neither proves that he did not defraud the court nor suggests that the defendants or their counsel have engaged in any wronging.

Just recently, Martin filed another Notice to Inform the Court (ECF 310). In it, he indicates that on April 1, 2021, his caseworker presented with a grievance dated October 2, 2019, and asked that he sign it. When he asked questions about the delay and sent the document to the law library for copies, he was allegedly retaliated against in a variety of ways. These new allegations do not implicate either the defendants in this lawsuit or their counsel. Whatever irregularity may have occurred with the October 2,

2019, grievance document has no bearing on the sanction issues pending before this court.

Martin also makes several requests for the court to take judicial notice of his new evidence. ECF 297; ECF 299; ECF 300; ECF 301. A court may take judicial notice of adjudicative facts if they are generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. The documents Martin has produced do not qualify for judicial notice, although they were considered by the court in adjudicating the pending matters. Therefore, these motions and requests for judicial notice (ECF 297; ECF 299; ECF 300; ECF 301) will be denied.

For these reasons, the court:

(1) DENIES Anthony C. Martin's Motion to Show Cause in Opposition of Sanctions (ECF 296; ECF 293 at 49-65);

(2) DENIES Anthony C. Martin's motion to inform the court and take judicial notice (ECF 297; ECF 301);

(3) DENIES Anthony C. Martin's Renewal for Motion for Sanctions Pursuant to FRCP 11 (ECF 299);

(4) DENIES Anthony C. Martin's Motion to Take Judicial Notice [F.R.E. 201] and Renewal for Sanctions (ECF 300);

(5) DENIES Anthony C. Martin' requests for a hearing on the issue of sanctions (ECF 290; ECF 303);

(6) GRANTS the defendants' Motion for Sanctions (ECF 267);

(7) SANCTIONS Anthony C. Martin as follows: this case is DISMISSED WITH PREJUDICE and he is banned from filing any document in any civil case in this court until he pays all fines and filing fees due in any federal court; and

(8) GRANTS Anthony C. Martin leave to file a motion to modify or rescind the filing ban two years from the date of this motion.

SO ORDERED on April 19, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT